David Krieger, Esq.
Nevada Bar No. 9086
Shawn Miller, Esq.
Nevada Bar No. 7825
KRIEGER LAW GROUP, LLC
2850 W. Horizon Ridge Parkway
Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com
Email: smiller@kriegerlawgroup.com

Attorney for Plaintiff
*Michelle Maluafiti*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MICHELLE MALUAFITI, | : |
|  | : Civil Action No.: _____ |
| Plaintiff, | : |
| v. | : |
|  | : |
| RUSHMORE LOAN SERVICING, LLC, | : |
|  | : **COMPLAINT** |
|  | : |
| Defendant. | : |
|  | : |

For this Complaint, Plaintiff Michelle Maluafiti, by undersigned counsel, states as follows:

## JURISDICTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting

methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.     Through a tightly wound set of procedural protections, the FCRA protects consumers from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.     This action also arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the harassment of Plaintiff by Defendant and its agents in their illegal efforts to collect

a consumer debt and jurisdiction is therefore proper in this Court pursuant to 28 U.S.C. § 1331.

4. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the U.S. District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b), as Defendant transacts business in the State of Nevada.

## PARTIES

6. Plaintiff Michelle Maluafiti ("Plaintiff") is an adult individual residing in Las Vegas, Nevada, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

7. Defendant Rushmore Loan Servicing, LLC ("Rushmore") is doing business in the State of Nevada as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

8. Rushmore is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

**A. The Debt**

9. Plaintiff allegedly incurred a financial obligation ("Debt") to Countrywide Home Loans ("Countrywide").

10. The Debt was for a residential mortgage provided by Countrywide, and were therefore primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5). The Debt was secured by Plaintiff's property located at 6472 Lake Scene Street, Las Vegas, Nevada, 89148 ("Property").

11. The Debt was purchased, assigned or transferred to Rushmore for collection.

12. Defendant attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

13. As the Debt as in default at the time Rushmore obtained servicing rights, Rushmore was acting as a default servicer and therefore is also a debt collector.

## FACTS

14. On May 13, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the District of Nevada ("Bankruptcy"). The Bankruptcy was assigned case number 11-17463-btb.

15. At the time the Bankruptcy was filed, Bank of America, NA ("BOA") was servicing the Debt as successor to Countrywide. BOA was notified of the Bankruptcy through the Bankruptcy Court's BNC noticing system. *See* Bankruptcy ECF No. 16.

16. On December 7, 2011, Plaintiff's case was voluntarily converted to Chapter 7. *See* Bankruptcy ECF No. 45.

17. On December 28, 2011, Plaintiff filed a Statement of Intention, indicating her intent to surrender the Property in satisfaction of the Debt. *See* Bankruptcy ECF No. 53.

18. On March 13, 2012, Plaintiff received a discharge in the Bankruptcy. *See* Bankruptcy ECF No. 72.

19. BOA received notice of Plaintiff's discharge through the Bankruptcy Court's BNC noticing system. *See* Bankruptcy ECF No. 73.

20. Neither BOA nor any other servicer of the Debt filed any proceedings to declare the Debt "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

21. Neither BOA nor any other servicer of the Debt obtained relief from the "automatic stay" pursuant to 11 U.S.C. § 362 *et seq.* while the Bankruptcy was pending to pursue Plaintiff for any *personal* liability.

22. Accordingly, the Debt was discharged.

23. Once Plaintiff's discharge was entered, Plaintiff no longer had any personal liability on the Debt, and the sole recourse for BOA (or any subsequent servicer of the Debt, including Rushmore) was to look to its remedies regarding the

Property.[1]

24.     However, Rushmore either reported or caused to be reported derogatory, inaccurate, or misleading information after the Bankruptcy.

25.     Specifically, Rushmore incorrectly continued furnishing or reporting information based on pre-bankruptcy contract terms with Plaintiff, which were no longer enforceable upon the bankruptcy filing; and certainly not after the discharge.

26.     Rushmore's inaccurate reporting did not comply with industry standard as discussed herein.  The Consumer Data Industry Association ("CDIA") provides reporting standards and guidelines to assist furnishers of information and credit reporting agencies with their compliance requirements under the FCRA and published and implemented the Metro 2 Format reporting standards ("Metro 2 Format").

27.     Courts rely on such standards to determine furnisher liability. *See e.g*. *In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit

---

[1] *See Morris v. Equifax Info. Servs*., 2020 U.S. Dist. LEXIS 71405, *12 (D. Nev. April 23, 2020) finding that "upon entry of the discharge order…personal liability on the loan [is] removed and all creditors [are] permanently enjoined 'against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any debt [on the loan] *as a personal liability of the debtor'"*.

reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

28. On information and belief, Rushmore adopted the Metro 2 Format reporting standards and at all times relevant implemented the Metro 2 Format as an integral aspect of its duties under FCRA, which requires adequate and reasonable policies and procedures be in place to handle investigations of disputed information.

29. Despite Metro 2 Format's instructions, Rushmore failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after Plaintiff filed Bankruptcy as further set forth below.

30. To this end, the adverse reporting on Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

31. A "materially misleading" statement is more than just inaccuracies in reported information. It also includes omissions that cause reported information to be misleading or that create misperceptions about otherwise factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

32. Upon information and belied, Rushmore obtained servicing rights to the Debt after the Bankruptcy either from BOA or subsequent servicers to which BOA transferred servicing rights of the Loan.

33. In October 2018, Plaintiff attempted to obtain mortgage financing.

34. In an Experian credit report dated October 18, 2018, Rushmore reported serious delinquencies regarding the Debt, as seen below, despite the fact Plaintiff had discharged all personal liability thereon as seen below:

[Experian credit report excerpt showing RUSHMORE LOAN MGMT SER, Conventional Mortgage, Opened 11/06, Reported 10/18, High balance 171,500, Reviewed 40 mos, Past due 1,256, Payment 360X $1096, Balance 145,703]

35. In a subsequent Experian credit report, dated November 14, 2018, Rushmore again reported significant derogatory information regarding the Debt, as seen below:

[Experian credit report excerpt showing RUSHMORE LOAN MGMT SER, Conventional Mortgage; Conventional; Fixed rate, Opened 11/06, Reported 11/18, High balance 171,500, Reviewed 33 mos, Past due -0-, Payment 360X $1110, Balance 149,423]

36. Since Plaintiff discharged the Debt in the Bankruptcy, it was illegal for Rushmore to report any post-discharge adverse information, such as late payments, since there was no longer an obligation to pay the Loan.

37. Similarly, it was illegal for Rushmore to report any post-discharge

balances owed as it did here in the amount of $149,000+, since there was no longer an obligation to pay the Loan.

38.    Additionally, the Rushmore tradeline was obsolete, since more than seven (7) years passed from the Bankruptcy filing in May 2011.  Therefore, the adverse information described above should not even have appeared on Plaintiff's credit reports.  See 15 U.S.C. §1681(c)(a).

39.    On or about May 15, 2020, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Rushmore's reported information regarding its reported obligation by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by Rushmore.

40.    Specifically, Plaintiff sent a letter, certified, return receipt, to Experian ("Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.  In pertinent part, the Dispute Letter read:

> My credit report shows you are inaccurately reporting information for a trade line with **Rushmore Loan Mgmt Servicing (Rushmmore)**, Account No. ███████.  Specifically, you inaccurately report a balance of $149,423 owed to Rushmore.  This information is inaccurate because I owe $0 to Rushmore.  This debt was discharged in my bankruptcy.  Further, you inaccurately report I was late with my payments on this account after my bankruptcy, which is inaccurate since this debt was discharged. Specifically, you report that I was 30 days past due from August 2016 through October 2018 and 60 days past due in June 2016 through October 2017.  This information is inaccurate as the debt owed to Rushmore was discharged at this time and it was inaccurate to state that I was late, since I had no financial obligation to pay Rushmore. Additionally this trade line is obsolete and should have been removed from my credit report no later than 5/13/2018, since it was obsolete (more than seven year old) at that point.

41. Upon information and belief, upon receiving the Experian Dispute Letter, Experian timely notified Rushmore of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

42. Rushmore was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

43. On or about June 10, 2020, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 2804-0716-32) that Rushmore received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6), and verified the account as "Updated".  However, Rushmore continued reporting significant derogatory information regarding the Debt.  Specifically, as seen below, Rushmore continued reporting a remaining balance and a scheduled payment amount on an account which was not only discharged in the bankruptcy, but also older than the seven year obsolescence period of the FCRA as follows:

[Image: Excerpt of Experian credit report for Michelle Catherine Maluafiti, Report # 2804-0716-32 for 06/10/20, showing Rushmore Loan Mgmt Servicing account, 15480 Laguna Canyon Rd Ste 100 Irvine CA 92618, partial account # ending 6700. Date opened Nov 2006, First reported Jul 2016, Recent balance $139,616 as of May 2020, Terms 30 Years, Status Open, Type Mortgage, Monthly payment $1,096, Responsibility Joint with ETUALE MALUAFITI, Credit limit or original amount $171,500, High balance Not reported, Recent payment $2,792, Date of Status Nov 2019. Payment history grid showing mostly OK status from 2016-2020. Account History table with AB, DPR, SPA, AAP rows across months from Jun18 through Apr20. Original amount of this account was $171,500.]

44. A reasonable investigation by Rushmore would have indicated Plaintiff filed bankruptcy and obtained a discharge more than seven years ago, and thus Rushmore's reporting was both inaccurate and obsolete. Particularly egregious is the fact that Plaintiff not only discharged the Debt, she surrendered the property securing it.

45. In the eight years since Plaintiff received her discharge, Rushmore has failed to exercise its foreclosure remedies against the property, instead choosing to pursue Plaintiff personally for a debt she does not owe.

46. Rushmore failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit report.

47. Further, by reporting inaccurate and misleading information in an attempt to collect the Debt, Rushmore violated 15 U.S.C. § 1692 et seq.

**B. Plaintiff Suffered Actual Damages**

48. Plaintiff has suffered, and continues to suffer, actual damages as a result of Rushmore's unlawful conduct.

49. As a direct consequence of Rushmore's acts, practices, and conduct, Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment. Plaintiff has also suffered

severe credit damage, and was denied finance and credit opportunities because of Rushmore's significant derogatory reporting regarding the Debt.

## COUNT I
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681, et seq.

50. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. Defendant failed to comply with industry standards. Defendant failed to comply with the Metro 2 Format instructions and reported inaccurate information, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

52. Not only was Defendant's reporting inaccurate and a departure from the credit industry's own reporting standards, Defendant's reporting was also materially misleading under the CDIA's standards as well.

53. A "materially misleading" statement is concerned with more than just an inaccurate statement. It also includes omissions to credit entries, which in context create misperceptions about otherwise factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

54. Defendant failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

55. Defendant failed to review all relevant information provided by Plaintiff in the Dispute Letter, as required by and in violation of 15 U.S.C. § 1681i(a).

56. Defendant re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, Defendant still reported a balance and scheduled payment amounts on debt that was discharged in Bankruptcy and was obsolete under the FCRA.

57. Upon receipt of the Dispute Letter, Defendant failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b)(1)(B).

58. Due to Defendant's failure to reasonably investigate Plaintiff's dispute, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

59. Despite Plaintiff's efforts to correct Defendant's erroneous and negative reporting in writing, Defendant neglected, refused, or failed to do so.

60. Defendant's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual errors was willful. Plaintiff is, accordingly, eligible for statutory damages.

61. Also as a result of Defendant's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation actual credit denials, fear of credit denials, out-of-pocket expenses in challenging Defendant's wrongful representations, damage to her creditworthiness, and emotional distress.

62. By inaccurately reporting account information relating to the discharged and obsolete Debt after notice and confirmation of its errors, Defendant failed to take the appropriate measures as required under 15 U.S.C. § 1681-s(2)(b)(1)(D).

63. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

64. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

65. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C.

§ 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT II
## VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692, et seq.

66. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

67. Defendant's conduct violated 15 U.S.C. § 1692e, e(2), e(5), and e(10) in that Defendant misrepresented the amount of the Debt owed by Plaintiff and attempted to have Plaintiff pay more than the Debt owed, and also communicated false credit information in an attempt to collect a debt; and these violations constitute various false representations and deceptive means to collect the Debt.

68. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

69. Plaintiff is entitled to damages as a result of Defendant's violations.

70. Plaintiff has been required to retain the undersigned as counsel to protect her legal rights to prosecute this cause of action, and is therefore entitled to an award of reasonable attorneys' fees plus costs incurred.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant, awarding Plaintiff:

### COUNT I.
### VIOLATIONS OF 15 U.S.C. § 1681

- actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

### COUNT II.
### VIOLATIONS OF 15 U.S.C. § 1692

- actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

///

- punitive damages; and

- any other and further relief that the Court may deem just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: September 10, 2020

                                                Respectfully submitted,

                                    By    <u>/s/ David Krieger, Esq.</u>
                                                     David Krieger, Esq.
                                                       Nevada Bar No. 9086
                                                       Shawn Miller, Esq.
                                                       Nevada Bar No. 7825
                                                       KRIEGER LAW GROUP, LLC
                                                       2850 W. Horizon Ridge Parkway
                                                       Suite 200
                                                       Henderson, Nevada 89052
                                                       Phone: (702) 848-3855
                                                       Email: dkrieger@kriegerlawgroup.com
                                                       Email: smiller@kriegerlawgroup.com